# United States Court of Appeals for the Federal Circuit

---

**INLINE PLASTICS CORP.,**
*Plaintiff-Appellant,*

v.

**EASYPAK, LLC,**
*Defendant-Appellee.*

---

2014-1305

---

Appeal from the United States District Court for the District of Massachusetts in No. 4:11-CV-11470-TSH, Judge Timothy S. Hillman.

---

Decided: August 27, 2015

---

ADAM PHILLIP SAMANSKY, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, MA, argued for plaintiff-appellant. Also represented by PETER CUOMO; BARRY KRAMER, DAVID JOHN SILVIA, Edwards Wildman Palmer LLP, Stamford, CT.

CRAIG M. SCOTT, Hinckley, Allen & Snyder LLP, Providence, RI, argued for defendant-appellee. Also represented by CHRISTINE K. BUSH; ANASTASIA ANDREYEVNA DUBROVSKY, Scott & Bush, Ltd., Providence, RI.

---

Before NEWMAN, CLEVENGER, and DYK, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Inline Plastics Corporation sued EasyPak, LLC for infringement of United States Patent No. 7,118,003 (the '003 patent) and No. 7,073,680 (the '680 patent), directed to tamper-resistant plastic food containers. Following the district court's claim construction, Inline moved for entry of final judgment of non-infringement of its '003 patent, on the premise that the claims as construed are not infringed. Inline also granted EasyPak a covenant not to sue on the '680 patent. The district court then entered final judgment of non-infringement of the '003 patent, dismissed without prejudice EasyPak's declaratory judgment counterclaims for invalidity, and dismissed Inline's count for infringement of the '680 patent with prejudice.[1]

Inline appeals the district court's construction of the claims of the '003 patent, stating that the terms "frangible section" and "tamper evident bridge" were incorrectly construed. We conclude that, on the facts and specification of the '003 patent, the district court erred in limiting the claims to a specific embodiment, for the invention as claimed is supported by the patent's broader disclosure. We vacate the judgment of non-infringement of the '003 patent, and remand for determination of infringement in accordance with the corrected claim construction.

## THE '003 PATENT

The patented products are plastic food containers having the described tamper-evident and tamper-resistant features. The containers have a hinged plastic bridge between the top and bottom portions of the container, the bridge having a frangible section that must be severed in

---

[1]    *Inline Plastics Corp. v. EasyPak, LLC*, No. 11-11470-TSH, 2014 WL 297224 (D. Mass. Jan. 24, 2014).

order to open the container.  Thus, tampering or opening of the container is readily evident.

Figure 1 of the '003 patent shows an embodiment of the tamper-resistant container, having a cover portion **12** and a base portion **14** joined by a hinge **16**.  The hinge includes a tamper-evident pull strip **18**, which upon removal severs the connection between cover **12** and base **14**:



The parties agree that claims 1 and 2 are representative:

1. A tamper-resistant/evident container comprising:

a) a plastic, transparent cover portion including an outwardly extending peripheral flange;

b) a base portion including an upper peripheral edge forming at least in part an upwardly projecting bead extending substantially about the perimeter of the base portion and configured to render the outwardly extending flange of the cov-

er portion relatively inaccessible when the container is closed; and

c) a tamper evident bridge connecting the cover portion to the base portion.

2. A tamper-resistant/evident container as recited in claim 1, wherein the tamper evident bridge includes a hinge joining the outwardly extending flange of the cover portion with the base portion, the hinge including a frangible section, which upon severing, provides a projection that extends out beyond the upwardly projecting bead of the upper peripheral edge of the base portion, for facilitating removal of the cover portion from the base portion to open the container.

EasyPak's accused containers embody all of the elements of claims 1 and 2. However, the EasyPak frangible section has a single score line along which the cover is severed from the base, whereas the '003 patent's preferred embodiment, as shown in Figure 1, has two score lines at the frangible section. The district court construed "frangible section" to mean "a removable tear strip, delimited by at least two severable score lines." *Inline Plastics Corp. v. EasyPak, LLC*, No. 11-cv-11470-TSH, 2013 WL 2395998, at *10 (D. Mass. Jan. 22, 2013) ("Claim Construction Order").

The district court acknowledged that it limited the claims to the embodiment shown in Figure 1, and stated that "declarations made during patent prosecution to surpass the prior art reveal a definitive focus on the removability of the frangible section and thus clearly and unambiguously disavow any other embodiment to the contrary." Claim Construction Order, at *6. The district court recognized that claims 1 and 2 did not contain a limitation to two severable score lines, but reasoned that the prosecution history supported this limitation. That is the issue on appeal.

DISCUSSION

The district court's claim construction is reviewed as set forth in *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015). "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction *de novo*." *Id.* at 841. Relevant factual determinations based on extrinsic evidence, such as prior art and expert testimony, are reviewed under the standard of clear error. *Id.*

A

FRANGIBLE SECTION

Applying these criteria, Inline argues that "frangible section" was incorrectly construed as requiring at least two score lines at the hinge. Inline states that "frangible section" should be construed to mean a "section of material that includes at least one score line or at least one perforation line." Inline points out that nothing in the specification, the prosecution history, or the prior art limits "frangible section" by the number of score lines by which the frangible section is severed.

The '003 specification describes the invention's features as "intended to prevent and deter opening container **10** without first removing frangible strip **18** from hinge **16**." '003 Patent, col.5 ll.65–67. The specification describes the preferred embodiment as:

> Preferably, frangible strip **18** is limited at least in part by a pair of parallel score lines **42***a*, **42***b* or areas that have been weakened or stressed during the forming process.

*Id.* at col.6 ll.24–26. The specification also states that a single score line or perforation is an alternative embodiment:

> Alternatively, the integral hinge **16** could be formed with a single score line or perforation line, rather than a pair of score lines. In this instance, the single score line could be severed to create a pair of projections which would be used to open the container.

*Id.* at col.6 ll.33–37.

Despite this explicit disclosure of an alternative single score line, the district court limited "frangible section" to require at least two score lines. No prior art or prosecution argument underlays this limitation. The district court referred only to the frequency with which the specification described the frangible section as having two score lines that form a severable strip.

Here, the preferred embodiment is not described as having certain unique characteristics of patentable distinction from other disclosed embodiments. Nor are other embodiments inadequately described in relation to the principles of the invention. Absent such traditional aspects of restrictive claim construction, the patentee is entitled to claim scope commensurate with the invention that is described in the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

EasyPak states that the prosecution history supports construction of "frangible section" to require at least two score lines. This argument is devoid of support in the prosecution history. The examiner did not require such limitation, and it was not a condition of patentability. There is no prosecution history disclaimer, which requires

clear and deliberate disavowal. *See, e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 833 (Fed. Cir. 2003) ("We therefore do not consider the applicants' statement to be a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the term provided by the written description.").

During prosecution, the examiner initially rejected claims 1 and 2 as anticipated by either of U.S. Patent No. 5,507,406 (Urciuoli) or German Patent DE 7816353 (Menshen), and rejections on the ground of obviousness were based on these references and also in view of U.S. Patent No. 4,535,889 (Terauds). In response, Inline emphasized that no reference showed a frangible section which, upon severing, "provides a projection that extends out beyond the upwardly projecting bead of the upper peripheral edge of the base portion for facilitating removal of the cover portion from the base portion to open the container." App. No. 10/895,687, Amendment and Response 15 (Jan. 17, 2006). Inline described Urciuoli's frangible section as "a perforated line, a groove or the like around the receptacle **210** in the outer segment 222." *Id.* at 9.

EasyPak states that Inline distinguished its invention from Urciuoli on the basis that Urciuoli's frangible section features a single perforated line. We cannot find such a statement in either the reference or the prosecution history. Inline's description of Uricuoli as containing a "perforated line, a groove or the like," was not the basis of Inline's distinction. To the contrary, Inline distinguished its invention from Urciuoli on the basis that "[n]owhere in [Urciuoli] is there any disclosure, teaching or suggestion to modify the container therein to provide a tamper evident bridge that connects a cover portion to a base portion." *Id.*



As depicted in Urciuoli Figure 2, the lid **250** nests within the edge or lip **222** of the container portion **210**. The frangible breakpoint **235** in Urciuoli is located in this lip section that lies around the container. To open the container of Urciuoli, a user applies pressure to a handle **215** on the container portion, breaks the frangible section, and lifts the lid portion out from its nesting position in the container portion.

The device of the '003 patent, unlike that of Urciuoli, has a hinge formed by outwardly extending edges on both the cover and base portions. The distinction between Urciuoli and the '003 device has no relation to the number of score lines on a tear strip, but rather to differences in the structure and opening mechanism as a whole. The Urciuoli structure indeed shows when tampering has occurred, but by a different mechanism. The number of score lines in the frangible lip of Urciuoli is not part of the tamper-evidencing mechanism.

EasyPak also argues that the declarations that Inline submitted to the PTO limit the claims to a tear strip having two score lines. That is an inaccurate description of the declarations. Inline submitted a declaration of Edward Colombo, a Director on Inline's Board, who described Inline's commercially successful containers as

having a frangible hinge with a removable tear strip. App. No. 10/895,687, Decl. of Edward A. Colombo 4 (Jan. 17, 2006). His statements describe the commercial embodiments and focused on the long-felt need met by Inline's commercial products:

> The containers disclosed in this patent application meet the long-felt needs identified above because they utilize a geometry that is suitable for thermoforming containers from a sheet of plastic material. Even more importantly, the containers disclosed herein can be thermoformed from a single piece of material, such as a single sheet of plastic. This material can be transparent. One of the structural features of the container that makes this single piece formation possible is the skirt that depends down from the peripheral rim of the container. This skirt is formed to have a vertical height that directly correlates with the height of a frangible hinge that includes a tear strip.

*Id.* Mr. Colombo did not address the number of score lines in the frangible section.

In correspondence with the PTO, Inline discussed the advantages of its structure. Inline explained that by having a "cover that is very difficult to open without removing the tamper-evident bridge connecting the cover to the base portion, pilferage is substantially reduced." App. No. 10/895,687, Supplemental Response 3 (Mar. 3, 2006). Inline also filed a declaration of its Vice President of Sales, August Lanzetta, and a statement from a customer, Arcade Industries, Inc. Both Mr. Lanzetta and Arcade Industries describe the Inline containers as featuring removable tear strips. Those declarations, like that of Mr. Colombo, focused on the commercial success of Inline's product, not the scope of the claims.

The patent examiner placed no emphasis on the number of severable lines. In allowing the claims, the examiner explained: "The container also includes a tamper evident feature, such as a tear strip, connecting the cover portion to the base portion." App. No. 10/895,687, Final Rejection 2 (June 19, 2006). There is no discussion in the specification or the prosecution history of any patentability reliance on the number of score lines by which the frangible section is severed.

Thus Inline proposes that the correct construction of "frangible section" is "a section of material that includes at least one score line or at least one perforation line," and refers to the doctrine of claim differentiation. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."). Claim 2 of the '003 patent, recited *ante*, includes the frangible limitation:

> the hinge including a frangible section, which upon severing, provides a projection . . . for facilitating removal of the cover portion from the base portion to open the container.

Claim 4 depends from claim 2 and is specific to the embodiment of two parallel score lines:

> 4. A tamper-resistant/evident container as recited in claim 2, wherein the frangible section of the hinge is delimited at least in part by a pair of parallel score lines.

Since the specification explicitly mentions the "alternative" of "a single score line or perforation line, rather than a pair of score lines," col.6 ll.33–37, there can be no debate concerning the application of the doctrine of claim differentiation, s*ee Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed

to be a difference in meaning and scope when different words or phrases are used in separate claims.").

Thus we correct the district court's claim construction, and construe "frangible section" to mean "a section of material that includes at least one score line or at least one perforation line."

## B

### TAMPER EVIDENT BRIDGE

The term "tamper evident bridge" was not in the '003 specification as filed. It was added to the claims during prosecution to distinguish the Urciuoli reference. When the term was added, Inline explained that Urciuoli does not show a tamper evident bridge that connects the cover to the base, and that the container in Urciuoli would have to be completely redesigned to accommodate the tamper evident bridge structure of the '003 patent.

The district court construed the term "tamper evident bridge" to mean "a structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred." Claim Construction Order, at *10. Except for the limitation of two score lines, which derives from the district court's construction of "frangible section," we discern no error in this construction. Thus we reconstruct "at least two" in the Claim Construction Order to "at least one."

### CONCLUSION

We have corrected the claim construction, whereby claims 1 and 2 are not restricted to the presence of at least two score lines or perforation lines. On this claim construction, the judgment of non-infringement of the '003 patent cannot stand. We vacate that judgment, and

remand for further proceedings based on the correct claim construction as set forth herein.

**REVERSED IN PART, VACATED IN PART, AND REMANDED**